# The Illinois Central Railroad Company

*v.*

# The City of Bloomington.

| 76 | 447 |
|---|---|
| 140 | 316 |
| 76 | 447 |
| 154 | 543 |
| 76 | 447 |
| 178 | 307 |
| 76 | 447 |
| 207 | 1360 |

1. CORPORATIONS—*liable to new duties and burdens the same as natural persons.* Corporations, when brought into existence, except so far as may be otherwise provided in their charters, or the general laws which enter into their charters, become liable to perform all the duties to the public that may be required of natural persons to the extent that they are capable of their performance, and they are entitled to protection in their rights to the same extent as natural persons.

2. SAME—*duty to make approaches and crossings over new streets.* Where, long after the construction of a railroad, a street was extended so as to cross the same, and the city passed an ordinance requiring the railway company to make a safe and proper crossing by grading the approaches

of the street at the crossing, there being nothing in the charter of the company imposing such duty, or any such duty imposed by any general law in force at the time the company was created: *Held*, that the company was not liable to this new burden any further than might have been required of an individual, and that, as the whole burden was sought to be placed upon the company without regard to benefits, the ordinance was in violation of the constitution, and could not create any liability upon the company, and that the legislature itself could not impose such burden without making compensation.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was an action on the case, by the city of Bloomington, against the Illinois Central Railroad Company. All the material facts of the case are stated in the opinion of the Court.

Messrs. WILLIAMS, BURR & CAPEN, for the appellant.

Mr. IRA J. BLOOMFIELD, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The railroad was built through the corporate limits of the city of Bloomington in the year 1852. When built, Chestnut street, which runs at right angles with the railroad, did not reach it by a half mile or more. The railroad ran on the line dividing the lands owned by Flagg and Davis. The company, before building their road, condemned the right of way over Flagg's, and Davis gave the right of way over his ground. Their lands were, at that time, used for farming purposes, but were within the city limits, until an addition was laid out in 1871. By several additions to the city, the streets were extended, and Chestnut street crossed the railroad.

Davis and Flagg gave the city, by conveyance, the right of way across the railroad, and its right of way. The city thereupon, by ordinance, directed the street to be opened, and

required the railroad company to make a proper and safe crossing by grading the approaches of the street at the crossing. This, the company refused to do, and the city thereupon did the grading and constructed the crossing, which cost $634.25, and the city brought suit against the company to recover that sum expended in making the crossing. On a trial, a jury was waived, and a trial had by the court. There being no contest as to the price paid for the work or the manner in which it was performed, the only question being whether the company was, under the facts in the case, liable to construct the crossing, the court found they were, and rendered judgment for the amount claimed. This appeal is brought, and questions the decision of the court below.

We are of opinion that appellee states the real question in controversy correctly when he says that the question is, whether it is within the power of the legislature to require existing railroad companies to construct suitable and proper crossings for streets and highways which are laid or extended across their tracks after they have graded and built their railroads. We do not see that any question was raised in the court below as to the right of the city to open this street over and across their right of way. We shall, therefore, omit all discussion of that question, and confine ourselves to the main question in the case.

That the General Assembly may, in granting a charter to a railroad company, impose, as a condition, that all such companies shall restore existing streets and highways across which the railroad shall run, to their former condition, as near as may be, would seem to be a proposition that admits of no doubt. And it is equally true that, if their charters were to contain a provision that they should so construct crossings over roads and streets subsequently located and opened, such a provision would be binding. And if the General Assembly were to provide, by general law, that railroad companies should make and keep up such structures at crossings when the road is built, as well as those that might be thereafter

29—76th Ill.

laid out and opened, all railroads subsequently constructed would be compelled to conform to the requirement unless exempted by their charters.

But the charter of the company contains no such provision, nor does the 25th section of the general railroad law of 1849 make such a requirement. (Laws 2d Sess. p. 28.) Nor has appellee referred us to any such provision in existence when this road was located and constructed.

Counsel for the city relies upon the provisions of the city charter, passed the 13th of February, 1861. The 20th paragraph of section 22 empowers the city, by ordinance, "To require railroad companies * * * to construct and keep in repair, and unobstructed, suitable crossings at the intersections of their roads with the streets." And the same is re-enacted by the amended charter of 1867, which also provides that this latter act shall not deprive the city of any of the powers previously possessed under former charters, unless by express enactment.

Incorporations, when brought into existence, except so far as exempted or further burthens are imposed, become liable to perform all duties to the public that devolve upon citizens. When brought into existence, they become endowed with the powers necessary to perform the functions and to accomplish the purposes of their creation, and they are under the same burthens and owe the same general duties to the public which can be rightfully required of natural persons, to the extent that they are capable of their performance. They are incapable of being endowed with political rights, but may be and are with many, if not all, of the rights of natural persons. They may sue and be sued, contract and be contracted with; they may buy, sell and hold property so far as authorized by their charters; they may earn, receive and have, and pay out money in the line of their business and according to the objects of their creation, but they are incapable of holding office, or, in fact, exercising any political rights beyond those conferred upon them by their charters. But, having the

rights of natural persons to the extent acquired at their creation, they are entitled to protection in those rights to the extent as all natural persons are in their rights. The same duties to the public may be required and enforced, but no greater or different burthens can be imposed than may be on individuals.

Suppose a natural person had the right of way across his neighbor's grounds, and afterwards the city were to locate and open a street across his right of way, does any one suppose the owner of the right of way could be compelled, by legislative enactment, or an ordinance in pursuance thereto, to construct the crossing of the street at his own expense, even if his use of the right of way would render the use of the street impracticable or dangerous until the approaches should be constructed? We presume no one would contend for the power in that case. And why? Because it would impose an unequal and unjust public burthen on the owner of the right of way that, in spirit, would be the taking of private property for public use without just compensation, which must be paid under the constitution.

If, then, such burthens can not be imposed upon a natural person, why, or by what reasonable means, can it be required of an artificial person? When brought into existence, these bodies are created persons so far as to become amenable to the same burthens in the support of the government, by taxes and the like, as natural persons coming into and subject to the government. But they are only liable to the performance of such duties to the same extent, on the same terms and conditions as natural persons. The legislature can exact of them no greater or higher duties than it can of natural persons, unless the right is reserved in their charters, or by some law that enters into their charters. One of the fundamental principles upon which all good government is constructed and is administered, is equality of burthens and protection. Any other principle is unjust and oppressive.

In the cases of *The City of Chicago* v. *Larned*, 34 Ill. 203, *The City of Ottawa* v. *Spencer*, 40 Ill. 211, and *Bedard* v. *Hall*, 44 Ill. 91, it was held, that the whole burthen of paving a street, laying a sidewalk, or improving a street upon the frontage of the property adjoining the improvement, is repugnant to the constitution, and that, in making such improvements, the benefits must be assessed upon all property enhanced in value thereby, and imposed on the same to the extent of the benefits, if required, or the improvement must be made by general tax.

Now, here is an improvement of a street that was required, and the city endeavored to impose the whole burthen upon the railroad company. It had never agreed to make this improvement. The duty was not imposed upon the company by their charter, or, so far as we can see, by any other law then in existence; and this being true, the General Assembly had no more power to fix this burthen on the company than to impose a similar burthen upon an individual, which we have seen, by the cases to which reference has been made, can not be constitutionally done. The principle announced in these cases is conclusive of this question.

Whether the right of way of the company is to be considered so far public property that it need not be again condemned where a street or highway crosses it, is not presented by this record. Nor is the question presented whether, the city having made the improvement, the railroad company may be required, as a police regulation, to keep it repaired, and hence these questions are not discussed.

But the court below erred in rendering judgment in favor of appellee, and it must be reversed.

*Judgment reversed.*

Mr. Justice Scott took no part in this decision.