THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

HENRY WILLENBORG *et al.*

*Filed at Mt. Vernon May 12, 1886.*

1. RAILROAD—*farm crossings—of a clause in a deed for right of way— duty of company.* Where a railway company accepts a deed for its right of way, containing a clause to the effect that it "shall erect and maintain such crossings as may be necessary to the accommodation of persons whose lands are divided by"· its track, this will clearly create a duty on the part of the company to erect and maintain suitable farm crossings for the owners of the land divided by its track, and a court of equity will not regard with favor a bill seeking relief from such duty.

2. SAME—*of the statutory requirement—constitutionality—retrospective operation of the statute.* The act of 1874, in relation to fencing and operating railroads, which imposes the duty on the railway companies to construct farm crossings for the use of the owners of land adjoining their tracks, is a valid and constitutional law, even in respect to railway corporations organized under charters long before its passage, its requirements being but police regulations.

3. The statutory regulations in regard to fencing railroad tracks, and the construction of farm crossings for the use of adjoining land owners, are police regulations, in the strict sense of those terms, and apply with equal force to corporations whose tracks are already built as well as those thereafter constructed. They have reference to the public security, both as to persons and to property.

4. All property devoted to public uses. takes on a nature or qualification *quasi* public, and for that reason is held to be subject to legislative control, ·in a greater or less degree, and to which 'mere private property of the citizen is not subjected. But even private property must be so used as not unnecessarily to injure another.

5. SAME—*farm crossing—in case the owner making the crossing—as to the place where built.* It being the duty of a railway company to construct farm crossings when and where necessary for the use of land owners whose lands are divided by its track, it will not be allowed to enjoin the owner from making such crossing, on its neglect to make the same on notice, on the ground the proposed crossing may be dangerous, when it has not offered to make one at some other place, and' without proof that a crossing at the place proposed would be more dangerous than elsewhere.

6. SAME—*in case the company had already provided a crossing—but not sufficient or safe.* A railway corporation will not be relieved of its duty, by

law, to make a farm crossing over its track for an owner whose land is divided by the track, merely because many years before it may have built a crossing upon other lands, and to make use of which would be attended with danger to such owner.

7. SAME—*remedy of land owner—neglect to build farm crossing by railroad.* The remedy of a land owner whose land is divided by a railroad track, for a refusal or neglect of the railway company to construct him a suitable farm crossing, whether the duty to make it arises out of a contract or under the statute, is full, complete and adequate at law. Therefore a court of equity has no jurisdiction to enforce performance of the duty.

WRIT OF ERROR to the Circuit Court of Effingham county; the Hon. THOMAS S. CASEY, Judge, presiding.

Messrs. GREEN & GILBERT, for the plaintiff in error:

No matter what right to a crossing defendants below might have had by virtue of any contract, the law did not permit the enforcement of that right by the strong hand of a trespasser. But they were claiming to act, not as trespassers, but under a power assumed to be granted in sections 51 and 52 of chapter 114 of the Revised Statutes of 1880. These sections were enacted nearly twenty years after the location and completion of the railroad of the complainant. The imposition of these new burdens is repugnant to the constitution. *Railroad Co.* v. *Bloomington,* 76 Ill. 447.

The pendency of a suit at law to recover damages for a breach of the covenant to construct a farm crossing, is a bar to relief in equity to enforce its specific performance. *Mason* v. *Richards,* 3 Gilm. 31.

Mr. JOHN C. WHITE, for the defendants in error:

It was the duty of the company to make the farm crossing. The statute imposes the duty. Statute of 1880, chap. 114, secs. 48, 51, 52.

This statute is a valid exercise of the police power of the State, and a salutary regulation of the use of property, that other property may also be enjoyed. Potter's Dwarris, 444,

456; Cooley's Const. Lim. (5th ed.) 710, 715; *Thorp* v. *Railroad Co.* 27 Vt. 149; *Commonwealth* v. *Alger*, 7 Cush. 53; *Hyeman* v. *Railroad Co.* 16 Barb. 353; *Railroad Co.* v. *McClelland*, 25 Ill. 144; *Railroad Co.* v. *Appleby*, 28 id. 283; *Railroad Co.* v. *Jacksonville*, 67 id. 40; *Ruggles* v. *The People*, 91 id. 262; *Railroad Co.* v. *The People*, 92 id. 100; *Railroad Co.* v. *Warrington*, 92 id. 162; *Railroad Co.* v. *Railway Co.* 105 id. 400; *Railroad Co.* v. *The People*, 105 id. 238; *Munn* v. *Illinois*, 94 U. S. 113.

By acceptance of the deed for right of way and enjoyment of the grant, plaintiff agreed and is equitably bound to make the farm crossing. *Gray* v. *Railroad Co.* 37 Iowa, 122; *Atlantic Docket Co.* v. *Leavitt*, 54 N. Y. 35; *Kellogg* v. *Robinson*, 6 Vt. 279; *Masury* v. *Southworth*, 9 Ohio, 340; *Railroad Co.* v. *Mitchell*, 47 Ill. 166; *Willenborg* v. *Railroad Co.* 11 Bradw. 298; 1 Washburn on Real Prop. (2d ed.) 14, sub-secs. 14, 16, pp. 621, 622.

A farm crossing properly constructed at the place selected by the defendants would discharge the duty owed by plaintiff, and satisfy the rights of defendants. *Abson* v. *Fenton*, 1 B. & C. 87, *201; *Wheeler* v. *Railroad Co.* 12 Barb. 227; *Wademan* v. *Railroad Co.* 51 N. Y. 568; *Gray* v. *Railroad Co.* 37 Iowa, 122; *Boggs* v. *Railroad Co.* 54 id. 440; *Jones* v. *Seligman*, 81 N. Y. 191.

Mr. Justice Scott delivered the opinion of the Court:

The original bill in this case is for an injunction and relief, and was brought by the Illinois Central Railroad Company, against Henry Willenborg and Frank Beckerman. It appears from the allegations of the pleadings, the right of way on which the road of complainant is constructed, divides lands owned by defendant Willenborg, and that a farm-crossing over complainant's road is necessary for the convenient use of the lands by the owner and his tenants. Defendant Beckerman is a tenant of his co-defendant Willenborg, and has

no other interest in the litigation. As early as 1852 the railroad company acquired the right of way over the premises by deed from Heinrich Fisher, and soon after constructed its road over the same, and since then has operated its trains thereon. On the 25th day of May, 1882, defendants notified the railroad company to build or construct, for the use of the farm, a private crossing over its track at a certain point indicated, and that if it did not build such crossing, defendants would proceed under the statute to construct it. The railroad company refused or neglected to build a crossing at the point indicated, or elsewhere on the farm, and defendants having entered upon the work of constructing such crossing, the bill in this case was brought to perpetually enjoin the further prosecution of the proposed work. It is alleged as a ground of relief, that at the point where the notice to defendant required the crossing to be constructed, there is a deep cut, where it is alleged it would have been manifestly unsafe to make a farm crossing; that when complainant purchased the right of way it realized the danger of building a farm crossing at the point in question, and had voluntarily made a crossing for the use of the owner of the land at a point three hundred feet north of the point now insisted upon, which for more than twenty years had been satisfactory.

The bill makes the point, sections 51 and 52, chapter 114, of the Revised Statutes, under which, it is alleged, defendants had entered upon the right of way and were constructing the crossing, are not obligatory on the railroad company, for the reason they were enacted many years since complainant received its charter from the State, under which it had constructed and operated its road, and if enforced, the result would be the taking of the private property of the company for the private use and benefit of the adjoining land owners, which, it is charged, can not be done, under the constitution, without first making compensation. In their answers defendants insist that sections 51 and 52, cited, are applicable and

binding on the railroad company, and if enforced will violate no provision of the constitution. They also insist upon the duty resting upon the company, arising out of a clause of the deed from Fisher to the corporation, which obligated the com-. pany to erect and maintain for him, and to whose rights defendants have succeeded, a convenient crossing, which is as follows: "It is understood that said company shall erect and maintain such crossings as may. be necessary to the accommodation of persons whose lands are divided by said track." They also deny that such crossing, when constructed, would be dangerous, either to the parties using it, or to the railroad company. After filing their answer, defendants filed their cross-bill, alleging the duty of the company to construct the crossing, both under the statute and also under the covenants contained in the right of way deed. On hearing the evidence, the circuit court dismissed the original bill for want of equity, and dissolved the injunction, with damages, and granted relief on the cross-bill. To reverse that decision complainant brings the case to this court on error.

There would seem to be no equitable considerations in support of the original bill, since complainant, by accepting the deed of the right of way, had covenanted to erect and maintain such crossings as may be necessary for the accommodation of persons whose lands are divided by the track of its road. Under that covenant, it is and was the clear duty of the railroad company to erect and maintain a suitable farm crossing for the owners of the land divided by its track, and equity will hardly listen with much favor to the complaint of a party who seeks relief against an obvious duty arising out of a covenant entered into upon a valuable consideration.

But the decision dismissing the original bill, as was done, may be sustained on the broad ground it was the duty of the company, under the statute, to construct suitable farm crossings for the use of the parties through whose lands its road-bed is constructed. Section 1, of the act of 1874, in

relation to fencing and operating a railroad, makes it the duty of every railroad corporation, within six months after its line is open for use, to construct farm crossings "when and where the same may be found necessary for the use of the proprietor of the land adjoining such railroad." Section 3 of the same act provides, whenever a railroad corporation shall neglect or refuse to build or repair such farm crossings, as provided in that act, the owner or occupant of the lands adjoining such railroad through which the railroad track is or may be laid, may give notice in writing to such corporation to build such crossing ten days after service of the notice. Section 4 provides, in case the corporation refuses to build such crossing after notice, as provided in section 3, the owner or occupant of such land may build it, and may recover double the value thereof from the defaulting corporation, with damages. Had similar provisions with these sections of the statute been incorporated in the charter of the corporation, or existed in some law that entered into its charter, it would hardly have been insisted the company would not be bound to observe them, or that their enforcement would violate any provisions of the constitution.

The point is made, however, that these provisions are not obligatory on this corporation, because they were enacted many years since it received its charter from the State. This is a misapprehension of the law. The regulations in regard to fencing railroad tracks, and the construction of farm crossings for the use of adjoining land owners, are police regulations in the strict sense of those terms, and apply with equal force to corporations whose tracks are already built, as well as those to be thereafter constructed. They have reference to the public security, both as to persons and to property. All property devoted to public uses takes on a nature or qualification *quasi* public, and is for that reason held to be subject to legislative control in a greater or less degree, and to which the mere private property of the citizen is not sub-

jected. Rights purely and exclusively private, in nowise affecting others, and in no way affecting public morals, are not regarded as being within the control of the police power; nor can mere private property be taken for public uses without making to the owner just compensation; yet the law has always required the citizen to so use his property as not unnecessarily to injure another, and, to compel the observance of that rule, even private property may be brought within legislative control to that extent. But where property, whether belonging to a natural person or to a corporation, becomes "affected with a public interest, it ceases to be *juris privati* only." Where a party devotes his property to a public use, the community at large acquire such a qualified interest as will subject it to legislative control for the common welfare. Accordingly, the property of railroads, and other similar corporations transacting business for and with the public, has been subjected to burdens not imposed on the owners of mere private property, used purely and exclusively for private interests. The distinctions in this regard have been uniformly observed. It is for this reason it has been frequently held that railroad corporations, notwithstanding no such right had been reserved in their charters, may be required to fence their track, to put in cattle-guards, to place upon their engines a bell, and to do many other things for the protection of life and property. No public exigency has ever made it necessary to impose such burdens on the citizen exercising no functions or occupations in their nature public or *quasi* public. Railroad companies are public corporations, in a limited sense, although the right of way, the road-bed, and the track thereon, are for the exclusive use of the owners, over which only their own conveyances are propelled. All others are excluded. The traffic, however, on railways, bears no analogy to our notions of travel on an ordinary street or highway. The uses are totally different, and even inconsistent. The one is exclusive in favor of the owner, and the other is open and free to all.

14—117 ILL.

The common use of railroads by the public could not be otherwise than dangerous. It is for that reason their use is. restricted to the owner. The fact railroad corporations are granted exclusive franchises to conduct a business in its nature public, must subject them to all reasonable control to secure the public safety and welfare. It is now the settled law, that railroad corporations are within the operation of all reasonable police regulations, otherwise there would be no security for the life or property of the citizen residing in the vicinity.

No reason is perceived why, upon the same principle on which a railroad corporation may be required to fence its track and construct cattle-guards, it may not be required also to construct farm crossings. The one is as much required as the other for the convenience and safety of the adjoining land owners. Such corporations are permitted, in order to secure the best and most useful road-bed, to make deep cuts and throw up embankments on their right of way through farms. On account of the peculiar construction of all railways, it is obvious it is impracticable for the owner whose lands are divided by the track, to pass from one part to another unless crossings are provided. Indeed, it would be most dangerous if persons should attempt to cross a railroad track at a point where no provision is made for that purpose, and persons are not permitted to do so. It certainly can not be inferred the legislature would irrevocably grant to a railroad corporation a franchise to construct a railway through farm lands in such manner as to cut off all right of passage to and from the portion separated by the road-bed. The proposition a corporation can construct a railroad from Galena to Cairo, and can not, under the police power of the State, be compelled to construct "farm crossings" over its track for the use of the owners of lands over which it passes, is too absurd to be considered seriously. That would occasion irreparable injury to the adjoining proprietor, and would be in

violation of that maxim of the law, *sic utere tuo ut alienum non lædas.*

The conclusion seems inevitable, the statute that requires a railroad corporation to construct farm crossings "when and where the same may become necessary for the use of the proprietors of the land adjoining such railroad," as well as to fence its track and construct cattle-guards, is a reasonable police regulation, and the enforcement of the duty enjoined by the statute violates no provision of the constitution.

The case of *Illinois Central Railroad Co.* v. *Bloomington,* 76 Ill. 447, is not analogous, in its facts or otherwise, with the case being considered, and is therefore no authority in support of the position taken by counsel in this case. In that case a new street was opened by the corporate authorities of the city across the track of the railroad, and it was sought to impose the whole burden upon the company to construct the approach of such new street to and over the track, and this, it was held, could not be done under any power conferred by the city charter. Constructing approaches to and crossings over the track for any number of streets that may be laid out by a municipal corporation, is a very different thing from constructing an ordinary farm crossing that is made indispensable by the construction of the track itself. The latter could reasonably be anticipated when the railroad was constructed, but it could hardly be expected the company could anticipate the municipal corporation would open new streets where none had existed when the track was located. Inasmuch as there was no law that made it the duty of a company to conform to a new state of facts that might transpire, it was held the General Assembly had no rightful authority, under the constitution, to impose such burden upon the company by a subsequent law. Nor is the case of *Chalcraft* v. *Louisville, Evansville and St. Louis Railroad Co.* 113 Ill. 86, sufficiently analogous in its facts to be an authority against the views expressed in this opinion.

The objection the construction of a crossing at the point indicated would be dangerous, can not be allowed to prevail. It is not shown there is any other place on the premises where the crossing would be less dangerous. That defendants are entitled to a crossing somewhere on their own land, either under the contract in the deed or under the statute, not the slightest doubt is entertained. But would a farm crossing at the point in question be dangerous? It is not proved it would be. It is shown the cut at the point in question is not much more, if any, than six feet below the line of the natural surface. Some dirt has been thrown from the cut upon the adjacent bank, and that makes the cut seem deeper than it really is. It is quite apparent a farm crossing properly constructed at the point indicated would not be dangerous for all the use that would be made of it for an ordinary farm crossing. Such crossings are only intended for the use and benefit of the farm, and the persons using it would be expected to observe more care than is ordinarily observed by the public on an ordinary highway. It may be that if there were another point on the farm of defendant where a crossing would be less dangerous, the company, when notified to build it, would have had the privilege to select it; but no such proof is made, nor did the company elect to build a crossing elsewhere on the land of defendants. Nor were defendants under any obligation to accept the crossing on other lands that had been provided many years before. To make any use of that crossing they had to follow the track on the right of way for a considerable distance before reaching it, and then return on the right of way on the other side of the track, to their own land. Such a mode of crossing the track is most dangerous, and the law will not require defendants to expose themselves to such hazards as its use would involve. In any view that can be taken, the decree dismissing the original bill is correct.

Coming now to the branch of the case made by the cross-bill of defendants, it is thought the decree rendered in their favor can not be sustained. Whether they are entitled to have a crossing constructed by the company for their use, either under the covenant in the right of way deed, or under the statute, or both, their remedy is clearly in a court of law, and they will be remitted to that forum, where such matters are properly cognizable. The remedy for the complaint made against the railroad company for the omission of duty, whether it arises out of a contract or under the statute, is full, complete and adequate at law, and no reason appears why a court of equity should assume jurisdiction.

The decree of the circuit court dismissing the original bill will be affirmed, and the decree granting relief to defendants on their cross-bill will be reversed, and the cross-bill dismissed. Each party will be required to pay its own costs in this court.

*Decree reversed in part and in part affirmed.*