DWYER et al, Appellants, v. CHICAGO & N. W. RY. CO.

Respondent.

(Two cases.)

(166 N. W. 237.)

(File No. 4058.   Opinion filed February 5, 1918.   Rehearing granted March 26, 1918.)

1.   Railroads—Private Farm Crossings—Applications to Railroad Board for Guards, Wing Fences—Guards, Board's Order For, Necessity—Statute.

Under Civ. Code, Sec. 541, providing that when a person owns land on both sides of a railroad, it shall, when so required make and keep in repair a cause-way or other safe and adequate means of crossing same, as amended by Laws 1913, Ch. 293, further providing that upon request of land owner, it shall maintain safe and adequate cattle guards over its right of way and tracks, when ordered to do so by railway commissioners, held, that cattle guards are required only upon such request, and when ordered by said board.

2.   Same—Private Farm Crossings—Cattle Guards, Wing Fences— Protection By Guards and Fences—Construction of Guards,

Whether Mandatory on Owner's Demand—Commissioner's De-
cision, Failure to Make Findings re Kind and Safety of
Guards—Constitutional Law—Error, re Due Process, Equal
Protection.

The decision of railway commissioners, upon application of
a farm owner of land on both sides of a railroad, for con-
struction of cattle guards and wing fences at a private cross-
ing, that the board is required, on request of land owner,
regardless of conditions existing at or connected with use of
the crossing, to issue an order for construction thereof, is
erroneous; Civ. Code, Sec. 541, as amended by Laws 1913,
Ch. 295, providing that, upon such request, the railroad com-
pany shall construct and maintain safe and adequate cattle
guards over its tracks, when requested by owner and when
ordered to do so by railway commissioners, not being manda-
tory; and the owner's demand must be considered in view of
its reasonableness under the conditions existing at, and the
use to be made of the particular crossing at time such request
is made; the amendatory provisions merely extending the duty
to provide safe and adequate means of crossing tracks, by
putting in guards where existing conditions and use are such
as to make them reasonably necessary.   Held, further, that
the board erred in failing to make findings under issues as to
whether the kind of cattle guards ordered to be constructed
would materially endanger safety of traveling public and of
persons operating trains, and as to whether cattle guards and
wing fences at these crossings were requqired to make them
safe and adequate, in view of the reasonable use intended to
be made of same by plaintiff farm owner in necessary travel-
ing and farm operations; the statute only requiring crossings,
whether with or without cattle guards, which are safe and
adequate; the matter of convenience alone not being con-
trolling; and in absence of such findings, trial court on appeal
from the decision of the board, erred in holding that enforce-
ment of the order for cattle guards and wing fences would
constitute taking defendant's property without due process of
law, and would deny defendant equal protection of the law.

3.   Same—Private Farm Crossings—Statutes Conferring Right to,
Whether Based on Police Power—Power, Whether Embracing
Private Rights

Statutes conferring upon land owner right to private farm
crossing over railroad are not grounded in police powers of the
state; such power extending to matters affecting public health
and safety or convenience, and comfort or morals of the com-
munity, not to matters affecting only private convenience or
individual rights.  The public has no interest and is not af-
fected by contracts or statutes providing for such private

crossings, except in so far as the mode of construction thereof may safeguard or endanger public travel or traffic on railroad trains; hence statutes requiring such construction solely for property owners' convenience may not be viewed as an exercise of police power, while those requiring and controlling construction of depot buildings, platforms, elevators, warehouses, switches, side tracks, fences along right of way, cattle guards at public crossings, etc., which are reasonably necessary for public convenience and safety, constitute a proper exercise of such power.

4.  Same—Private Farm Crossings, Statutes Conferring Right to— Vested Rights—Police Power, Interference of With Owner's Rights—Whether Statute Unconstitutional?—Test of Constitutionality.

Where the only purpose of a statute providing for construction and maintenance of private farm crossings over a railroad right of way, is to serve convenience of private land owner, different principles than those applying to public convenience and · safety, such as construction of depot buildings, cattle guards at public crossings, etc., are involved; in the former case questions of vested property rights may arise, interference with which is limited by constitutional provisions.  A statute constituting an exercise of police power reasonable in itself, is not deemed an unconstitutional interference with vested rights, merely because its execution causes expense and inconvenience to property owners; police regulations being tested, as to constitutionality, by considering whether, in view of all facts, the taking of private property is merely arbitrary and unreasonable, or is justified by public necessity which the carrier could lawfully be compelled to meet.

5.  Same—Private Farm Crossings—Public Interests, Whether Involved—Basis of Right to Private Crossing, Statutory, Contractual—Rule of Construction.

In the matter of construction of farm crossings for private convenience alone, no public interests are involved; and the right to demand private farm crossings lays in statutory provisions, or in private contract; such statutes being grounded in legislation controlling all corporations or persons seeking to exercise quasi public functions, such as business of common carrier, and the acceptance, actual or implied, of statutory conditions regulating reasonable duties and obligations not only to the public, but for necessary convenience of private persons directly affected thereby.  Such duties affecting personal or private property rights alone are in nature more nearly contractual, but may be enlarged by express or implied reservations of the right in the statute or charter, or by agreement; but such statutes are not to be construed, nor will contract rights be

permitted to operate, so as to destroy or endanger public
safety or convenience.                          ,

6. . Same—Regulations for Fencing and Crossings, How Far Police
   Regulations?—Public Safety—Police Power, Carrier's Duty,
   When Founded In?—Property, Non-injurious Use of, Rule.

   The proposition that regulations regarding fencing railroad
tracks and construction of farm crossings for use of adjoining
farm owners are strictly police regulations, is correct only in
a limited sense.   In so far as such regulations provide for
and are designed for the public safety and convenience, they
are within the police power of the state; but when they are
exclusively for convenience of private persons, the use of
whose property is affected by construction of the railroad, the
duty of the carrier is not founded in police power, but rests
upon the principle of law compelling observance of the rule
that the owner of property must so use it as not to unneces-
sarily injure it, and the principle that property which has
become "affected with a public interest * * * ceases to be **juris
privati** only;" the reason being that "the community at large"
acquires such a qualified interest as will subject it to legisla-
tive control for the common welfare.

7. Same—Farm Crossings—Statutes Compelling Construction of,
   When Unconstitutional?—Quasi Public Instrumentality, Sta-
   tutory Control of—Rule—Use of Railroad Property, Effect—
   Statutory Conditions.

   A law which might attempt to compel the owner of private
property, such as a railroad, to expend it in furnishing con-
veniences for another private person, would be clearly uncon-
stitutional; but when such owner seeks to use his property as
an instrumentality in performance of quasi public functions,
which are subject to governmental control, it becomes subject
to such requirements as the state imposes, and to others of
similar character which may thereafter be imposed, not incon-
sistent with such use, and not arbitrary nor unnecessary to
accomplishment of theoriginal purpose; and use amounts to
a binding acceptance of such reasonable conditions and re-
quirements.

8. Same—Private Farm Crossings—"Cattle Guards," as Safe Means
   of Crossing Track—Private Crossing, Compared to Public—
   "Safe" Private Crossing, Use, As Affecting.

   The term "cattle guards," is not defined by statute; but
the object to be accomplished is clearly stated, to wit: a safe
and adequate means of crossing the track. The use of private
crossings, while limited in extent to needs of individual land
owner, may be the same in character as at a public crossing.
To make a private crossing safe, the same construction might
be necessary as at a public crossing, though adequate and

reasonable safety both depend on use to be made of it by
land owner.

9.  **Same—Private Farm Crossings, Amendatory Statute Requiring
    Guards, Wing Fences, Whether Unconstitutional.**

    Matters which arise from changed local conditions are
    within the purview of the object intended to be accomplished
    by an original statute providing for construction and mainte-
    nance of private farm crossings, etc.; and a subsequent
    amendment requiring cattle guards or wing fences at farm
    crossings at expense of carrier, where existing conditions re-
    quire them, is not unconstitutional.

Appeal from Circuit Court, Beadle County. Hon. ALVA E.
TAYLOR, Judge.

Two proceedings by John Dwyer and C. Dwyer, against the
Chicago & Northwestern Railway Company commenced before the
Board of Railroad Commissioners, for construction and main-
tenance by the defendant Railway Company, of cattle guards and
wing fences over its right of way on Appellants' farms. The board
having ordered such guards and wing fences to be constructed,
upon appeal therefrom to the circuit court, findings and judgments
were entered therein vacating said order. From said judgment
and from an order denying a new trial, the petitioners and the
Board of Railway Commissioners appeal. Judgment and order
reversed, and cause remanded with directions to remand same to
the Board of Railway Commissioners for new trial.

*P. W. Dougherty,* and *Oliver E. Sweet,* Assistant Attorney
General, for Appellants.

*A. K. Gardner,* for Respondent.

(2)  Under point two of the opinion, Appellants submitted
that: The Board's order does not require the taking of property
for private purposes; and cited: State v. Mason City and Ft.
Dodge Ry. Co. (Ia.), 52 N. W. 490. That these proceedings con-
stitute due process of law: citing: State ex rel. O. R. & N. Co.
v. Fairchild, 224 U. S. 510; 32 Sup. Ct. 535; 56 L. Ed. 863;
4 R. C. L. page 625, Sec. 97; Turner Creamery Co. v. C. M.
& St. P. Ry Co., 154 N. W. Rep. 819.

Respondent cited: Great Northern Railway Co. v. Minn.
Comm. 238 U. S. 340; Washington ex rel v. Fairchild, 224 U. S.
510; C. M. & St. P. R. Co. v. Wisconsin, 238 U. S. 491; Mc-
Innis v. New Orleans R. Co. (Miss.) 68 So. 481.

(3)  To point three of the opinion, Appellants cited: Const.

Art. 6, Sec. 13; 8 Cyc. 874, Atlantic, etc. R. R. Co. vs. State 89 A. S. R. 233 236. Pond on Public Utilities, Sec. 554; Pacific Telephone & Telegraph Co. vs. Wright in Dickinson Hotel Co., 214 Fed. 669; Notes to case of Pac. Tel & Tel. Co. v. Eshleman, 50 L. R. A. (N. S.) 656; Wisconsin M. & P. R. Co. v. Jacobsen, 179 U. S. 288; IV. Cook on Corporations, Section 900; Note IV., Cook on Corporations 3312.

(4)   To point four of the opinion, Respondent cited:   Missouri Pac. R. Co. v. Nebraska, 217 U. S. 196.

(7)   To point seven of the opinion, Respondent cited:   People v. Detroit R. Co. (Mich.) 44 N. W. 934.

(8)   Under point eight of the opinion, Appellants submitted that:  Inasmuch as section 541, Civ. Code, does not mention wing fences, the question arises as to whether the board was justified in including in its order the requirement that wing fences be constructed. In this respect the provision of the statute is that the causeway or crossing must be safe and adequate, and that the cattle guards over the right of way must likewise be safe and adequate; and cited:   Missouri Pacific Company v. Manson, 2 Pac. Rep. 800.

Respondent cited:   Aistrope v. Tabor (Ia), 75 N. W. 334; McInnis v. New Orleans R. Co. (Miss.) 68 So. 481.

SMITH, J.   The Board of Railroad Commissioners at the request of appellants, owners of certain farm lands lying on both sides of respondent's railway tracks in Turner county, due proceedings being had, entered its order requiring respondent to put in cattle guards, and also wing fences extending from the boundary line fence along its right of way to the cattle guards in the track.   Upon appeal to the circuit court, findings of fact were made by the trial court upon which judgment was entered vacating the order of the commission.   Property owners and the Board of Railroad Commissioners appeal.

It is conceded that ever since the construction of the railway, about 1883, the railway company has put in and maintained private farm crossings and has constructed and maintained proper gates at such crossings, for the use of the landowners, and has done all grading necessary to make proper approaches to said crossings.   It is conceded that the railway company had fully com-

plied with the requirements of section 541, Civil Code, as it stood prior to its amendment by chapter 295, Laws 1913. The original section was as follows:

"When any person owns land on both sides of any railroad, the corporation owning such railroad, shall, when required so to do, make and keep in good repair one causeway or other safe and adequate means of crossing the same."

[1]   This section in identical language was originally enacted as section 106 of chapter 15, Territorial Laws of 1867-68, was re-enacted as section 484 of the civil code of 1877, and again as section 541, Civil Code of 1903, and was in effect at and long prior to the time respondent became incorporated under the laws of this jurisdiction. As amended the section provides:

"When any person owns land on both sides of any railroad, the corporation owning such railroad shall, when requested so to do, make and keep in good repair one causeway or other safe and adequate means of crossing the same, and shall, upon request of the owner of said land, construct and maintain safe and adequate cattle guards over its right of way and tracks, when ordered to do so by the Board of Railroad Commissioners, and thereafter it shall be the duty of the owner of the land to keep the gates for said crossing closed, except when in actual use."

The amendment refers to two things not specifically mentioned in the original section, viz. cattle guards, and gates, as constituting a "crossing" of the track. Cattle guards are required only upon request, and when ordered by the Board of Railroad Commissioners.

Formal pleadings were filed before the Board of Railroad Commissioners, and the matter was heard upon issues thus raised. The complaint in substance alleges a demand, and refusal of defendant to construct adequate means of crossing its railroad track and right of way, including cattle guards and wing fences at such crossings, and prays an order by the Board of Railroad Commissioners requiring the defendant to construct crossings and cattle guards as provided by chapter 295, Laws of the State of South Dakota for the year 1913.

The answer of the defendant by a general denial raised certain issues which are not material here, and by way of further answer alleged that to construct and maintain the character of

crossings asked by plaintiff would be exceedingly dangerous and would be a constant menace, imperilling the lives of defendant's employes in charge of its trains, and the lives of passengers carried over its said line; that there is no necessity for the construction and maintenance of such crossings as complainant demands; and that the required construction and maintenance thereof would be unconstitutional as denying the defendant equal protection of the law in violation of the state and federal Constitutions.

At the hearing plaintiff offered the testimony of John Dwyer, C. Dwyer, and one Benson. The defendant offered the testimony of some 12 witnesses. There is practically no dispute in the evidence upon any matters which are material here.

The decision of the Board of Railroad Commissioners recites that:

"The testimony of the defendant is practically all directed against the dangerous conditions growing out of farm crossings protected by cattle guards and wing fences, particularly as to where such crossings are to be constructed and maintained as open crossings; there being some testimony tending to show that the danger is somewhat increased by the construction of cattle guards and wing fences, inasmuch as any such construction might under certain conditons create a shadow or blind, thereby obstructing the view and increasing the danger."

The commissioners held that the making of the order prayed for would be a proper exercise of the police power of the state, and that it has authority to impose additional duties and requirements upon a ʳᵒ ⁿⁿ carrier, either for the protection and convenience of the general public, or for the protection and convenience of property owners. After quoting section 541 of the Civil Code as amended, the commission says:

"It is clear from a reading of the above-quoted statute that the intention of the Legislature was to compel a railroad to construct and maintain a farm crossing with suitable and adequate cattle guards when requested to do so by persons owning land on both sides of its track; and in the enforcement of the statute, this commission is justified in issuing an order requiring the construction and maintenance of such facilities as demanded, and the order is predicated upon the obligation of the defendant to

equip its farm crossings with fences and cattle guards under chapter 295 of the Session Laws of 1913."

[2] We understand this to mean that the statute as construed requires the construction of such crossings as are described in the order at every farm crossing in the state upon demand of the landowners, regardless of conditions existing at or connected with the use of the particular crossing, and that the board is required to issue such order in all cases when request therefor has been made. We do not think the statute is thus mandatory. We are of the view that every such demand must be considered in view of its reasonableness under the conditions existing at and the uses to be made of the particular crossing at the time such request is made. Certainly it was not intended to require the construction of such crossings regardless of their use, or of their necessity for the convenience of the landowner. The mere fact that an order is required for cattle guards implies a hearing and determination as to the propriety of such order. It is also plain that upon such hearing the kind of cattle guards which will render a crossing "safe and adequate" must be determined.

[3, 4] Statutes which confer upon landowners the right to private farm crossings are not grounded in the police powers of the state. The police power extends to matters which affect the public health and safety or the convenience, comfort, or morals of the community. It does not extend to matters which affect only private convenience or individual rights. The public has no interest in and is not affected by contracts or statutes which provide for private farm crossings, except in so far as the mode of construction thereof may safeguard or endanger public travel or traffic on railroad trains. It follows that statutes which require construction of farm crossings solely for the convenience of property owners may not be viewed as an exercise of police power, while those which require and control the construction of depot buildings, platforms, elevators, warehouses, switches sidetracks, fences along right of way, cattle guards at public crossings, etc., which are reasonably necessary for public convenience and safety, constitute a proper exercise of such power. Where the only purpose of such a statute is to serve the convenience of the private landowner, different principles

would be involved. In such case questions of vested property rights may arise, interference with which is limited by constitutional provisions.

A statute which constitutes an exercise of police power reasonable in itself is not deemed an unconstitutional interference with vested rights, merely because its execution causes more or less expense and inconvenience to the property owner. Police regulations are tested as to their constitutionality by considering whether, in view of all the facts, the taking of private property is merely arbitrary and unreasonable, or is justified by public necessities which the carrier could lawfully be compelled to meet. Wash. ex. rel. O. R. & N. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed 863.

[5] In the matter of constructing farm crossings for private convenience alone, no public interests are involved. It is not contended or even suggested by appellants that the putting in of cattle guards and wing fences is necessary to safeguard persons or property transported on defendant's trains. On the contrary, appellants' entire evidence is directed to show farm conditions which require such crossings for convenience in moving stock and farm produce. The right to demand private farm crossings rests in statutory provisions or in private contract. Railway Co. v. Odeneal, 73 Miss. 34, 19 South 202. Such statutes are grounded in the legislative control over corporations or persons seeking to exercise quasi public functions, such as the business of common carriers, and the acceptance, actual or implied, of statutory conditions regulating reasonable duties and obligations not only to the public, but for the necessary convenience of private persons directly affected thereby. Such duties affecting rights of persons or private property alone are in their nature more nearly contractual, but may be enlarged and extended by express or implied reservation of the right in the statute or charter, or by agreement of the parties. State v. M. & Ft. D. Ry. Co., 85 Iowa, 516, 52 N. W. 490; I. C. R. Co. v. Bloomington, 76 Ill. 447. But such statutes are not to be construed, nor will contract rights be permitted to operate, so as to destroy or endanger the public safety or convenience. In Chalcraft v. L., E. & St. L. R. R. Co., 113 Ill. 86, that court says:

"In giving construction to the statute, it is quite evident it could not have been intended the interests of the landowner or occupant are alone to be consulted, for the question also affects the interests of the railroad company and the public.  *  *  * Moreover, the rule is general that where a conflict arises between a mere private convenience on the one side and the public welfare on the other, and one much give way, the former must yield to the latter. The public welfare demands as high a degree of safety in the transportation of persons and property by railroad as is reasonably attainable in view of the character and exigencies of that mode of transportation, and anything, therefore, which tends to directly and materially imperil the safety of such transportation, is so far inconsistent with the public welfare, and ought not to be allowed for the mere sake of a private convenience."

In Shipp v. Belt Ry. Co., 133 Tenn. 238, 180 S. W. 318, after quoting from the Chalcraft Case, the court says:

"We agree with the principles laid down by that court. No crossing will be required or allowed at a point which would tend to directly and materially imperil the safety of transportation, for where the rights of the individual come in conflict with those of the public, the rights of the individual must yield."

[6]   The statement in Ill. Cent. Ry. Co. v. Willenborg, 117 Ill. 203, 7 N. E. 698, 57 Am. Rep. 862, that:

"The regulations in regard to fencing railroad tracks, and the construction of farm crossings for the use of adjoining landowners, are police regulations in the strict sense of those terms," etc.—is, we think, correct only in a limited sense. In so far as such regulations provide and are designed for the public safety and convenience, they are undoubtedly within the police power of the state.  But when they are exclusively for the convenience of private persons, the use of whose property is affected by the construction of the railroad, the duty of the carrier is not founded in the police power, but rests upon the principle of law which compels observance of the rule that the owner of property must so use it as not to unnecessarily injure another, and the principle that property which has become "affected with a public interest  *  *  * ceased to be juris privata only," for the reason that "the community at large acquires such a quali-

fied interest as will subject it to legislative control for the common welfare."

[7]    A law which might attempt to compel the owner of private property to expend it in furnishing conveniences for another private person would be clearly unconstitutional, but when such owner seeks to use his property as an instrumentality in the performance of quasi public functions, which are subject to governmental control, it becomes subject to such requirements as the state imposes, and to others of similar character which may thereafter be imposed, not inconsistent with such use, and not arbitrary nor unnecessary to the accomplishment of the original purpose, and use amounts to a binding acceptance of such reasonable conditions and requirements.

[8, 9]    The original section of the Civil Code in substance required "a safe and adequate means" of crossing the track. The amended section does not change this, but adds that the railway company shall "construct and maintain safe and adequate cattle guards over and across the right of way," when ordered by the Board of Railway Commissioners. This addition to the original statute is merely an extension of the duty to provide a safe and adequate means of crossing the track, by putting in cattle guards where existing conditions and use are such as to make them reasonably necessary. The term "cattle guards" is not defined by the statute, but the object to be accomplished is clearly stated, to wit, a safe and adequate means of crossing the track. The use of private crossing, while limited in extent to the needs of the individual landowner, may be the same in character as at a public crossing. To make a private crossing safe the same construction might be necessary as at a public crossing, though adequacy and reasonable safety both depend upon the use to be made of it by the landowner. Matters which arise from changed local conditions are within the purview of the object intended to be accomplished by the original statute, and a subsequent statutory enactment by way of amendment requiring cattle guards or wing fences at farm crossings at the expense of the carrier, where existing conditions require them, is not unconstitutional. We are of the view that the Board of Railroad Commissioners were in error in holding that the right of plaintiffs to cattle guards and wing fences

became absolute upon demand, and in failing to make findings upon the issues raised by the pleadings as to whether the kind of cattle guards ordered to be constructed would materially endanger the safety of the traveling public and of persons operating trains, and as to whether cattle guards and wing fences. at these crossings were required to make them safe and adequate, in view of the reasonable use intended to be made of the same by plaintiff in necessary traveling and farming operations. The statute only requires crossings, whether with or without cattle guards, which are safe and adequate. The matter of convenience alone is not controlling.

The cause was plainly considered and determined by both the trial court and the Railroad Commission upon erroneous. theories of the law. These issues of fact should have been considered and determined. And in the absence of such findings,. the trial court erred in holding that the enforcement of the order would constitute the taking of defendant's property without due process of law, and would deny the defendant the equal protection of the law.

The judgment and order denying a new trial are reversed,. and the cause is remanded to the trial court, with directions to remand the same to the Board of Railroad Commissioners for a new trial.