DWYER, Appellant, v. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Respondent.

(171 N. W. 760).

(File No. 4058.   Opinion filed April 1, 1919.   Rehearing denied June 3, 1919.)

1. **Railroads—Cattle Guards, Order of Railway Commissioners, Failure to Find Re Danger to Public From, Whether Error—Statute—Burden of Proof.**

Upon rehearing, former holding of the Court that Board of Railway Commissioners, in failing to make findings as to whether the kind of private crossing and cattle guards ordered to be constructed across defendant's right of way, would endanger safety of the traveling public, etc., (40 S. D. 84, 166 N. W. 237,) is modified, and order of said board is affirmed; it being evident upon the report filed by the board that its holding, under Laws 1913, Ch. 295, gave claimants the absolute right to have such cattle guards and wing fences installed; this although the board erred in regarding the only material facts to be those of ownership of lands on both sides of the track and a request for construction of the cattle guards, etc., since such construction of the statute would create an absolute property right without compensation or due process of law; yet under said statute, complainant, by proving ownership of lands on both sides of track and his demand for a crossing, etc., had made out a prima facie case, and the burden of proof was then upon railway company to show in defense it would be unreasonable to order such crossing constructed; that it

also rested on defendant to propose and procure findings covering its defense; that without additional findings showing a condition that would render the crossing an unnecessary or unreasonable requirement, railway commissioners could take no other action than issue the order which it did; hence no prejudicial error resulted from commissioners' order.

2. Appeals—Error—Correct Order, Wrong Reason, Whether Reversal Follows.

It is a well established rule that where the judgment or order appealed from is correct, it will not be reversed because trial court gave a wrong reason for its rendition.

3. Appeals—Error—Railroads—Cattle Guard, Construction—Railway Commissioners' Findings Wanting, Facts Undisputed, No Assignment of Error, Effect.

Where neither upon appeal from the order of railway commissioners to circuit court, nor upon appeal from order of circuit court to Supreme Court, involving the ordered construction of a private cattle guard and crossing, over defendant railroad track, was there any assignment of error, either by claimants or railway company, questioning sufficiency of findings, or lack of findings, and there being no dispute as to the facts, **held**, that whether or not formal findings were made is of little if any material consequence, and failure to make such findings is not prejudicial.

4. Railroads—Private Cattle Guard, Crossing—Statute Requiring Guards on Owner's Request, Whether Valid Exercise of Police Power.

Laws 1913, Ch. 295, requesting railroad companies, upon request of owner of lands on both sides of the railway, to make and keep in repair a causeway and adequate cattle guards across the track when ordered by railway commissioners, is a valid and constitutional statute, and a proper legislative exercise of police power.

5. Railroads—Private Cattle Guards, Fences, Order of Railroad Commissioners, Whether Reasonable—Courts, Intervention by Re Commissioners' Order—Rule.

Upon the findings and evidence in the record, **held**, that the order of Railway Commission requiring respondent to construct a private crossing with cattle guards and fences, was not an arbitrary order, but was justified by the circumstances; and said commission did not abuse its administrative discretion in making such order; it being the rule that courts will not intervene to disturb orders of such boards unless commissioners have abused statutory discretion by acting without justifiable cause or reason therefor.

Smith, P. J., and Gates, J., dissenting.

Upon rehearing. Rehearing granted. Judgment and order

of Circuit Court reversed, and original order of Railway Commission affirmed.

See, for former opinion, 40 S. D. 84, 166 N. W. 237.

*P. W. Dougherty,* and *Oliver E. Sweet,* for Appellants.

*A. K. Gardner,* for Respondent.

McCOY, J. On rehearing. The former opinion on which rehearing has been granted will be found in 40 S. D. 84, 166 N. W. 237, in which will be found a statement of the contents of the record and of the general issues involved on this appeal. As will be observed, there was a hearing and an investigation of the facts had before the Board of Railway Commissioners, and a report made, and an order issued by said board, requiring the railway company to construct certain cattle guards, and wing fences upon its right of way crossing the private farm property of claimants. From such order the railway company appealed to the circuit court, wherein a trial de novo on the merits was had, upon the same evidence produced before the railway board, and findings and judgment rendered, denying and overruling the said order of the Railway Commission, from which findings and judgment of the circuit court an appeal has been taken to this court by the claimants and also by the Board of Railway Commissioners. By the former opinion of this court it was held that the Board of Railway Commissioners, upon the investigation made by it, had failed to make findings as to whether the kind of crossing, cattle guards, and wing forces ordered to be constructed would endanger the safety of the traveling public and persons operating trains, and by reason of such failure of the railway board to make such findings, this court reversed the judgment of the circuit court, and remanded the cause back for new trial before the Board of Railway Commissioners.

[1] After careful inspection of the record, we are of the opinion that the findings and judgment of the circuit court should be reversed upon the merits, and the order made by the Board of Railway Commissioners affirmed. From the report filed by the railway board, which contains all the probative evidence submitted, it is evident that the said board, holding as it did, took the position as a matter of law that chapter 295, Laws 1913, then in force, gave the claimants the absolute right to have such cattle guards

and wing fences installed. Under the evident views of the board the only material facts were the ownership of lands on both sides of the railroad track and a request for the construction of the cattle guards and wing fences. In this we are of the view that the board was clearly in error. Such a construction of the statute would create an absolute property right without compensation or due process of law. The decisions of the Supreme Court of Minnesota and the Supreme Court of the United States in State ex rel. v. M. & St. L. Ry. Co., 87 Minn. 195, 91 N. W. 465, and 193 U. S. 53, 24 Sup. Ct. 396, 48 L. Ed. 614, based upon a similar statute of the state of Minnesota, seem to us to be applicable to the situation present in the case at bar. Under our statute, as in Minnesota, the Railway Commission was required, upon a hearing, to make a report, including findings of fact upon which to base its conclusions. In the case at bar the railway board made a report, which contained all the evidence submitted, including some findings of fact, apparently all the board thought material, as it is evident the board thought no other findings of fact necessary, it evidently being the view of the board that the landowner had an absolute right to the crossing and cattle guards under the statute. The facts found by our Railway Commission were that the claimants owned land on both sides of the track, and that the railway company failed and refused, on request, to construct and maintain adequate crossing and cattle guards.

[2] It appears that some time prior to the institution of the Minnesota case, the same village had brought an action to require the railway company to construct a depot; that the village failed in that suit; that prior to the bringing of a second suit the statute had been amended so as to expressly require the railway company to maintain a depot in all villages through which its road passed. On the appeal of the second case it was held that the effect of the change of the statute was to change the burden of proof; that under the law as changed the railway board had the power to order the depot, unless it was made to appear that such order would be so unreasonable as to result in depriving the railway company of its property without due process of law; that the burden was on the railway, after proof of the existence of the village and demand for the depot, to show

that the building of a depot in that village was unnecessary and unreasonable. On appeal to the Supreme Court of the United States this decision was affirmed, that court holding that the Minnesota statute did not transcend the power of the state, that to establish stations and depots at proper places was the duty of the railway company, and that the state could provide for the enforcement of that duty, and that to make it prima facie so by statute, and to impose the burden of meeting this prima facie presumption on the railway company, would not amount to an invasion of the rights of property or an unreasonable control thereof.

Now, chapter 295, Laws 1913, in nature and effect, is precisely the same as the statute in Minnesota. As soon as the complainant Dwyer proved that he owned land on both sides of the track and had demanded a crossing and cattle guards be had made out a prima facie case. It then devolved upon the railway company to show that it would be unreasonable in this case to order such crossing constructed. The burden rested on the railway to prove its defense. And it also rested on the railway to propose and procure findings of fact covering its defense. Without additional findings showing a condition that would render the crossing in question an unnecessary or unreasonable requirement, the Railway Commission could reach no other conclusion, and could take no other action, than issue the order which it did. Under the undisputed facts no unusual conditions existed at the places where crossings were demanded. It follows that the commissioners could not, on the evidence, have made findings supporting the only defense the railway company could interpose; therefore, though the commissioners proceeded on an erroneous view, no prejudicial error resulted therefrom. There was no call for the commission to make additional findings of fact, unless requested by the railway company to do so, and then only in case the facts of the case warranted such additional findings. It is a well-established rule that where the judgment or order is correct, it will not be reversed on appeal because the court gave a wrong reason for its rendition. It is the correctness of the order, and not the reason assigned therefor, that is involved

on the appeal. In re Yankton Drainage Ditch, 38 S. D. 168, 160 N. W. 732; Davis v. Jacobson, 3 N. D. 430, 101 N. W. 314.

[3] Neither the appellant nor respondent, on this appeal, or the appeal in the circuit court, by any assignment of error or otherwise, ever questioned the sufficiency of the findings, or lack of findings, of fact by the Railway Commission, as a matter precedent to the original order made by said board. In accordance with the provisions of the statute relating to hearings and report of trials before the Railway Commission, all the evidence submitted on the trial before the said board is in full contained in its report, which is a part of the record in this case. As stated in the former opinion there was no material conflict or dispute in relation to the facts. The appeal to the circuit court was to review the probative facts and evidence on the merits to determine therefrom whether or not the said order was unreasonable. As there is no dispute about what the facts actually are, whether or not formal findings were made is a matter of little, if any, material consequence, and is surely not a prejudicial matter. No possible prejudice could result to either party or any one else interested in this case from the fact that the railway board failed to show further findings of fact in its report.

[4] We now come to the proposition, which of the two orders, that of the railway board, or that of the circuit court, should stand as legally right upon the merits presented by the record. Chapter 295, Laws 1913, in force at the time this proceeding was instituted, provided that when any person owned lands upon both sides of any railway, the corporation owning such railway should, when requested so to do, make and keep in good repair a causeway or other safe and adequate means of crossing the same, and should, upon request of the owner of said land, construct and maintain safe and adequate cattle guards over its right of way and tracks, when ordered to do so by the Board of Railway Commissioners, and thereafter it should be the duty of the owners of the land to keep the gates for said crossing closed, except when in actual use. We are of the opinion that this was a valid and constitutional statute and a proper legislative exercise of police power. M. & St. L. Ry. Co. v. Emmons, 149 U. S. 364, 13 Sup. Ct. 870, 37 L. Ed. 769; I. C. Ry. Co. v. Willen-

borg, 117 Ill. 203, 7 N. E. 698, 57 Am. Rep. 862; State ex rel. v. M. & St. L. Ry. Co., supra.

[5] We are also of the opinion that the original order made by the Railway Commission, requiring respondent to construct said crossing, cattle guards, and fences, was not an arbitrary and an unreasonable order; but, on the other hand, was justified and warranted by the circumstances, and based upon proper and sufficient reasons. It is urged by respondent that the construction of said crossing with cattle guards and wing fences would increase the danger and hazard of the traveling public and persons operating trains on said line of railroad, that weeds and other debris would gather on the wing fences, and obstruct the vision of the operator of the engine so that animals on such crossing night cause wrecks. We are of the view that, under the facts shown, and based on common observation, this contention of the respondent is not well grounded. We are of the view that there would be greater liability of wrecks without the existence of the wing fences and cattle guards than with them. Common observation teaches that cattle and other animals, such as horses, in crossing 100 foot wide right of way, between ordinary farm gates in the right of way fences, would run up and down the track between such fences, and, unless there were at least three persons driving any considerable number of such animals across the railway track, many of such animals might go up and down said track for some distance, rendering such stock more liable to be struck by trains than would be the case with wing fences and cattle guards extending across the right of way on either side of such gates. Under said chapter 295 it is made the duty of the landowner to keep the gates closed, except when in actual use. When in actual use some person would always of necessity be present caring for the safety of the stock, and when not in use, with the gates closed, there would be no stock on the crossing or behind the fences to cause wrecks. It would be the duty of the railway company to remove all obstruction and debris that might accumulate on the fences. Common observation tells us that employees of railways, such as section men, almost daily pass along and over such tracks, and whose duty it would be to remove any

such obstructions such as weeds and other debris that might accumulate on the fence.

Therefore we are of the view that the order of the commission appealed from was a reasonable regulation, and that the Railway Commission did not abuse its administrative discretion in making such order. It seems to be generally held that courts will not intervene to disturb the orders and decisions of such boards, unless the commissioners have abused their statutory discretion by acting without any justifiable cause or reason therefor. Cahill et al v. Railway Co., 40 S. D. 55, 166 N. W. 306.

We are of the opinion that the learned circuit court erred in its findings of fact and conclusions of law.

The judgment and order of the circuit court are reversed, and the original order of the Railway Commission affirmed.

SMITH, P. J. (dissenting). I cannot concur in holding that the Board of Railroad Commissioners in this case has made findings of fact and conclusions required by the statute as the basis of its order requiring private cattle guards.

Chapter 312, Laws 1913, does not change the requirements of chapter 207, Laws 1911. Section 17 of the latter act specifying the duties of the board, says:

"It shall be its * * * duty to make a report in writing * * * which shall include the findings of fact upon which the conclusions of the board are based, together, with its * * * recommendations or orders," etc.

Section 3, c. 312, Laws 1913, specifically provides that:

"The final record or judgment roll of said board in any action or proceeding" shall contain, among other things, "the findings of fact, conclusions and order made by the board.":

It is clear that findings of fact and conclusions are necessary as the basis of a final order.

This court has held, as most if not all other courts have held under constitutional provisions vesting judicial powers in courts, that the board is an administrative body, but that it is vested with authority to hear evidence and determine facts upon which the exercise of its administrative powers depends, and, recognizing this rule, the statute in express terms requires that the board

shall make "findings of fact and conclusions" upon which it bases its administrative orders.  The majority opinion states that:

"As there is no dispute about what the facts actually are, whether or not formal findings were made is a matter of little, if any, material consequence, and is not prejudicial error.  No possible prejudice could result * * * in this case from the fact that the railway board failed to show further findings in its report."

This statement when applied to this case is equivalent to holding that when a sufficient defense is pleaded and the evidence to sustain such defense is undisputed, the defendant is not prejudiced by a failure to make findings upon the facts pleaded as such defense.  I cannot concur in holding that an administrative board, whose methods of procedure are specifically prescribed by statute, may ignore the statute, as was plainly done in this case.  If it be assumed, as argued in the majority opinion, that the burden was cast upon appellant of proving that the building of the private cattle guards in question would increase the ordinary hazard and danger of injury to the traveling public and its employees, it is perfectly clear from the evidence of numerous witnesses, wholly undisputed, that a finding was required upon that issue.  None was made.  With this evidence in the record, I am totally unable to see how my Associates can say, as they do in the majority opinion:

"The commissioners could not, on the evidence, have made findings supporting the only defense the railway company could interpose; therefore, though the commissioners proceeded on an erroneous view, no prejudicial error resulted therefrom."

This statute means what it says.  It provides a logical and simple mode of procedure which will present the state of facts upon which relief is awarded.  The conclusions drawn from the findings of fact constitute the views of the board as to the relief which should be granted.  The order follows.

A large number of competent witnesses on behalf of appellant testified that the construction of the cattle guards demanded at these private crossings would greatly enhance the danger of accidents and injuries both to the persons traveling on appellant's trains and to its employees.  This evidence was absolutely undisputed.  That the question raised by this evidence was material,

and perhaps even vital, cannot be doubted. It was not considered or passed upon by the board. The only allusion to it in the so-called "findings" made by the board is as follows:

"The defendant in its answer alleges that to construct and maintain the character of crossings asked by the complainants would be extremely dangerous both to its employees and to the traveling public, and that there is no necessity for the construction of said crossings. * * * The testimony of the defendant is practically all directed against the dangerous conditions growing out of the construction of farm crossings protected by cattle guards and wing fences, particularly as to where such crossings are to be constructed and maintained as open crossings, there being some testimony tending to show that the danger is somewhat increased by the construction of cattle guards and wing fences, inasmuch as any such construction might, under certain conditions, create a shadow or blind, thereby obstructing the view and increasing the danger."

No finding upon this issue is made by the board, and no discussion in its report of the question raised by this evidence, other than a statement that the situation here is not analogous to that existing at the Olney ranch, which is on a grade, while the crossings under consideration are on a straight track, with slight grade and unobstructed view. The concluding paragraph of the discussion makes it absolutely clear that the board did not find and did not purport or intend even to make a finding upon this question:

"It is clear from a reading of the above-quoted statute that the intention of the Legislature was to compel a railroad to construct and maintain a farm crossing with suitable and adequate cattle guards when requested to do so by persons owning land on both sides of its track, and in the enforcement of the statute this commission is justified in issuing an order requiring the construction and maintenance of such facilities as demanded, and the order is predicated upon the obligation of the defendant to equip its farm crossings with fences and cattle guards under chapter 295 of the Session Laws of 1913."

A mere allusion to the pleading, the evidence, and the law is not a finding of fact. When proper findings are made and conclu-

sions stated, an argument based upon such findings, either for the purpose of sustaining the findings, or the conclusions, may be appropriate. This, in substance, is the practice followed by the Interstate Commerce Commission, a purely administrative body. In this proceeding there are no findings of fact whatever by the board. There is in the record an argument and discussion of the law, in which reference is made to the evidence and to certain decisions. An examination of this argument makes it entirely clear that the board considered the statute providing for cattle guards at private crossings upon demand to be mandatory, and that the order made was based upon that theory alone. We are all agreed that this is an erroneous view of the law. The board has never considered at all the questions of fact and law presented as a defense, and upon which this court is asked to review the action of the board upon this appeal. For this reason I concurred in the order remanding the proceeding to the board for further consideration upon correct principles of law, and for the making of necessary findings of fact and conclusions. That this court has authority to correct errors of an administrative body in its procedure, or in its interpretation or application of the law, there can be no doubt. But the board created by law is primarily charged with the duty and power to investigate material facts and grant administrative relief, and it should be given such opportunity. Neither the circuit court nor this court should assume the responsibility of entering its original judgment or conclusion upon matters which have never been considered or passed upon by the board. The fact that the trial court may have made findings of fact and conclusions of law cannot relieve the board of that duty. The circuit court, for the reason stated, should have vacated the order and sent the proceeding back to the board for findings and report, and it follows that this court should remand the cause to the circuit court, with directions to remand it to the Board of Railroad Commissioners to make findings of fact and conclusions, either on the record already made, or upon such further hearing and record as the board may determine.

Upon further reflection, I am of the view that the police power, in its broad sense, includes the power to compel the owner of property to so use it as not to unnecessarily injure another,

and therefore that the statute in question does rest upon the police power of the state. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; 9 Ency. U. S. Sup. Ct. 512.

GATES, J., concurs in the dissent.