[No. 1706, January 9, 1915.]

NEW MEXICO WOOL GROWERS' ASS'N v. ATCHI-
SON, T. & S. F. RY. CO.

SYLLABUS BY THE COURT.

The State Corporation Commission is authorized by the
provisions of section 7, art. 11, of the state Constitution to
require railway companies to provide and maintain ade-

(Reporter's note. This case was cited with approval by the Su-
preme Court of the U. S. in Great Northern Ry. Co. v. State of
Minnesota, ex rel. Railroad & Warehouse Commsn. U. S. Adv. Ops.
1914, p. 753.)

quate depots, stock pens, station buildings, agents, and facilities for the accommodation of passengers and for receiving and delivering freight and express. Upon a petition presented to the Commission asking that a railway company be required to install and maintain hoof stock scales at designated stations, the burden of proof rested upon the petitioner to establish the fact that such scales were a necessary facility for receiving and delivering shipments of live stock. Where the evidence shows that the rates for the shipment of live stock are based upon the minimum capacity of cars, in stated pounds, and that the weights are determined upon track scales in transit or at points of destination, and that hoof stock scales are never used for determining the weight upon which the tariff is based, and that in loading stock into the cars the shipper loads the same, not according to weight, but places in a given car only so much stock as will ride safely to the point of destination, without over-crowding and consequent suffocation, and that the only useful purpose such scales would serve would be to enable the shipper to settle with those from whom he has purchased live stock, at the point of shipment, such hoof stock scales cannot reasonably be held to be a necessary facility for receiving and delivering freight.

P. 37

Appeal from State Corporation Commission; M. S. Groves, O. L. Owen, and H. H. Williams, Commissioners.

Proceeding instituted before the State Corporation Commission by the New Mexico Wool Growers' Association, by Horace C. Abbott, its president, and Charles Chadwick, its secretary, against the Atchison. Topeka & Santa Fé Railway Company, a corporation. From an order denying the relief sought, petitioner appeals. Affirmed.

JOHN W. WILSON, of Albuquerque, for appellant.

The question at issue depends upon the legal interpretation of the word "facilities" and "equipment" as used in section 7, article XI of the state Constitution.

The duty to furnish such facilities is co-terminous with the power of the corporation, and the obligation to discharge the duty must be considered in connection with the corporate business as a whole, the character of the service required, and the need for its performance.

Atlantic Coast Line R. C. v. N. C. Corp. Commission, 11 Ann. Cas. 398.

The Supreme Court determines the reasonableness and lawfulness of the order made by the Commission on the evidence adduced before it.

Woody v. D. & R. G. R. Co., 17 N. M. 686. Seward v. D. & R. G. R. Co., 17 N. M. 557.

R. E. TWITCHELL, of Santa Fé, for appellee

No brief filed.

## OPINION OF THE COURT.

ROBERTS, C. J.—This is a proceeding instituted by the New Mexico Wool Growers' Association, before the State Corporation Commission, for the purpose of compelling the Atchison, Topeka & Santa Fé Railway Company to install and maintain hoof stock scales at its stations of Albuquerque, Magdalena, Springer, Encino, and Grants, N. M. The petition, among other things, alleged that such scales were necessary facilities for receiving and delivering freight. Briefly stated, the petitioner alleged that it was an organization representing the sheep growers of the state of New Mexico; that the freight rates for the shipment of sheep and other live stock were based on minimum weights of car load lots; and that such scales were necessary facilities in order to enable the shipper to load such cars to their full minimum capacity.

The railroad company appeared, and in its answer alleged, among other things, the following:

"Defendant further states that shipments of sheep and other live stock from and to the points mentioned in the complaint herein and the freightage charges therefor are made and computed upon bases in no way requiring the use of

hoof scales at points of origin or points of desti-
nation. Defendant further states that the sole
use of said class of scales desired by complain-
ants is for the purpose of facilitating the con-
summation of business transactions between
buyers and sellers of sheep and other live stock
on bases of weight in lieu of fixed prices per
head, and, in so far as questions of transporta-
tion are concerned, are no part thereof what-
ever."

At the hearing of the cause before the Commission, R.
H. Crews, secretary of the sheep sanitary board, testified
as to the number of sheep shipped from each of the sta-
tions above named. The only other witness introduced
by the complainant was Charles Chadwick, secretary of
the complaining association. He testified that such hoof
stock scales should be installed so that shippers would be
able to ascertain when they were loading cars to their
minimum capacity, but he admitted that a shipper al-
ways loaded into the car the number of sheep which, in
the shipper's judgment, would ride safely to market, with-
out overcrowding and consequent suffocation. He also
admitted on cross-examination that sheep buyers, in pur-
chasing sheep, usually contracted for the purchase of the
same according to average weight, which was to be as-
certained at the point of shipment; that when the sheep
are delivered the weight is ascertained, and that the as-
certaining of the weight is a part of the business between
the buyer and seller, and that hoof stock scales were used
as an incident to the buying and selling of sheep. It is
only fair to the witness, however, to state that he insisted
that such scales were a necessary facility for the accom-
modation of the shipper, so that he could ascertain the
minimum weight to be loaded into a car for shipment.

On behalf of the railroad company several witnesses
testified. The evidence of the defendant was to the ef-
fect that its tariffs were based on car capacity, and the
charge made on minimum weight, which was ascer-
tained by weighing the car on track scales, usually at the
point of destination, but not necessarily so; that no reas-

onable necessity existed for the installation of hoof stock
scales, as such installation and operation would not serve
to establish the weights upon which such freight charges
are based, but would only be used as an accommodation
to the shipper in the determination of weights upon a
class of property the ownership of which is to be changed,
and to be used by the consignor or consignee as a basis
in the conduct of private affairs.

The questions to be determined in this proceeding are
governed by the provisions of section 7 of article 11 of
the state Constitution. The portion of section 7 particu-
larly applicable reads as follows:

> "The Commission shall have power and be
> charged with the duty * * * to require rail-
> way companies to provide and maintain ade-
> quate depots, stock pens, station buildings, agents
> and facilities for the accommodation of passen-
> gers and for receiving and delivering freight and
> express. * * * The Commission shall also have
> power and be charged with the duty to make and
> enforce reasonable and just rules requiring the
> supplying of cars and equipment for the use of
> shippers and passengers."

The State Corporation Commission found, from the
evidence adduced before it, that:

> "The installation and maintenance of hoof
> live stock scales in stockyards is not such a fa-
> cility as is contemplated in the language of the
> Constitution of the state of New Mexico pre-
> scribing the matters and things over which this
> Commission shall exercise jurisdiction, in that
> it does not constitute a part of the transporta-
> tion facility; does not constitute a part of the
> housing and storage for the protection of freight
> or live stock presented for shipment; does not
> constitute a facility as a means of determining
> the weight upon any given shipment wherein the
> transportation company is interested, as it is
> shown by the evidence that all weights upon
> which the tariff is based are determined by track

scales in transit and at points of destination, and that in no case is the use of hoof stock scales used for determining the weight upon which the tariff is based. It is also shown by the evidence that practically the only use to which said hoof stock scales could be used is for the determination of weight of a given shipment for the purpose of settlement between parties engaged in the barter and sale of such live stock. Notwithstanding the fact that it is claimed by petitioners herein that stock scales are used primarily for the purposes of determining the weight of live stock loaded into the car in order to determine when they have reached the minimum weight as provided in the tariffs covering that class of shipment, yet the evidence shows that it is a common practice, and the invariable rule of live stock shippers, that they do not in any wise conform to such weights, but load the car with sufficient number of sheep or cattle or other live stock so as not to overload, and yet carry the maximum number of head of such live stoock as will comfortably ride in a car of a given space capacity."

Upon the above and other findings not necessary to incorporate in this opinion, the Commission entered an order dismissing the complaint and denying the relief asked. From this order the petitioner prosecutes this appeal.

The question as to whether hoof stock scales are a necessary facility for receiving and delivering freight, which the Corporation Commission is authorized to require railway companies to install and maintain, depends upon whether such scales are required or are reasonably necessary for such purpose. The burden of proof rested upon complainant to establish such fact. State of Washington ex rel. Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863. Where the evidence shows that the rates for the shipment of live stock are based upon the minimum capacity of cars, in stated

pounds, and that the weights are determined upon track scales in transit or at points of destination, and that hoof stock scales are never used for determining the weight upon which the tariff is based, and that in loading stock into the cars the shipper loads the same, not according to weight, but places in a given car only so much stock as will ride safely to the point of destination, without overcrowding and consequent suffocation, and that the only useful purpose such scales would serve would be to enable the shipper to settle with those from whom he has purchased live stock, at the point of shipment, such hoof stock scales cannot reasonably be held to be a necessary facility for receiving and delivering freight.

The evidence·taken before the Commission establishes the above facts. It further shows that at practically every point where such scales were asked to be installed by the railroad companies private parties have already erected scales, which shippers are permitted to use upon payment of a slight compensation. As stated, the ascertainment of the weight of live stock, for the purpose of settlement between buyer and seller, does not concern the railroad company, and it cannot justly be required to furnish a facility not a factor in the receipt or delivery of freight or express, or for the accommodation of passengers.

Upon the facts established at the hearing the Commission properly denied the relief sought.

HANNA and PARKER, JJ., concur.