CAHILL & REDMAN et al, Respondents, v. GREAT NORTH-
ERN RY. COMPANY, Appellant.

(166 N. W. 306.)

(File No. 4186.   Opinion filed February 5, 1918.)

1. **Carriers—Application for Stockyard Scales—Carrier's Duty to Install, for Local Dealers—Rule.**

   A railway carrier owes no duty to the local buyer or seller of live stock, as to installation of stockyards scales for his convenience in buying live stock; nor at all until the stock is tendered at the stockyards for shipment.

2. **Railroads—Railroad Commissioners, Order of to Install Stockyards Scale—Sparcity of Shipments—Evidence, Sufficiency.**

   Where, in an application for installation by a railroad of a stockyards scale, the evidence showed that 56 interstate carloads of stock were shipped from the station in question from 1912 to April, 1915, immediately preceding the hearing, and no intra-state shipments were made save 2 single animal shipments, held, that the Board of Railroad Commissioners properly ordered the railroad in question to install at a station a four-ton stockyard scale, to facilitate the weighing of local stock loaded into and unloaded from cars at the station.

3. **Carriers—Furnishing by Railroad of Stockyard Scales, Whether Pertaining to Transportation—Reasonable Facilities—Rule.**

   The furnishing of stockyard scales by a railroad carrier, at point of shipment of live stock, by means of which shipper may ascertain the minimum loading of cars, as well as excess loading, so far pertains to transportation business as to con-

stitute such scales a reasonable facility for transacting its business with shippers at initial points of shipment; the reasonableness of such requirement, however, depending upon surrounding circumstances and conditions.

4. **Railroad Commissioners—Authority to Investigate, Determination, Conditions re Transportation Facilities—Decision of Board, When Reversal Justified—Rule.**

Where an administrative commission, such as the Board of Railroad Commissioners, has been created by law, and vested with authority to investigate and determine conditions which justify requirement of proper facilities for transportation of commodities or passengers, the general rule is that its determination upon matters of fact should not be disturbed by appellate courts, unless it clearly appears that the decision is unreasonable, or arbitrary, or based upon an erroneous or mistaken theory of law.                              ,

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Upon application of Cahill & Redman, to the Board of Railroad Commissioners, said Board ordered that the Great Northern Railway Company. a corporation, installed and put into operation at a station a stockyards scale at Albee Station, and from the judgment of the Circuit Court, reversing the order of the Board, the State appeals. Order affirmed.

*Oliver E. Sweet,* Assistant Attorney General, for the Railway Commission.

*Aikens & Judge,* for Respondent.

(3) To point three of the opinion, Appellant cited: Great Northern Railway Company v. Minnesota Railroad and Warehouse Commission. 238 U. S. 340; New Mexico Wool Growers Association v. Atchison, Topeka & Santa Fe Railroad Co., (N. M.), 145 Pac. Rep. 1077.

Respondent cited: Florida East Coast R. R. Co. v. U. S. 234 U. S. 185; Mo. Pac. R. R. Co. v. Neb., 164 U. S. 417; I. C. C. v. Louisville & N. R. C., 227 U. S. 90; Washington, ex rel Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 532, 533.

(4) To point four of the opinion Appellant cited: Chap. 207, Laws of 1911, Sections 1, 2, 4; Chap. 214, Laws 1907; Chap. 39, Laws 1909; Chap. 209, Laws 1909; Chap. 267, Laws 1909; Chap. 212, Laws 1911; Chap. 214, Laws 1911; Chap. 215, Laws 1911; Chap. 303, Laws 1913; Chap. 264, Laws 1915; Chap. 263, Laws 1915; Chap. 270, Laws 1915; Chicago, R. I. & P. Ry. Co.

v. Nebraska State Railway Commission, 85 Neb. 818; 124 N. W. 477; 26 L. R. A. (NS) 444; Minneapolis, St. P. & S. St. M. R. Co. v. Railroad Commission of Wisconsin, 116 N. W. 905; 17 L. R. A. (NS) 821; Chicago, I. & L. Ry. Co. v. Railroad Commission of Indiana, 78 N. E. 338.

Respondents cited: New Mexico Wool Growers Association v. Atchison, Topeka & Santa Fe (N. M.) 145 Pac. Reporter 1077; Great Northern Railway Company v. Minnesota Railroad & Warehouse Company, 238 U. S. 240.

SMITH, J. The Board of Railroad Commissioners made an order:

"That the Great Northern Railway Company construct and put in operation at its stockyards at its station at Albee, in Grant county, in this state, not later than April 15, 1916, a four-ton Fairbanks-Morse stockyards scale, in such manner as to permit of the weighing of local stock loaded into and unloaded from cars at that station, as well as the weighing of stock received into the stockyards at Albee."

The Great Northern Railroad appealed from this order to the circuit court of Minnehaha county, and that court, upon review of the evidence and proceedings before the Board of Railroad Commissioners, found as a matter of fact that a scale at the stockyyards at Albee was not a facility necessary for the convenience and accommodation of the public; that shipments of local stock from said station are made and freight charges thereon computed upon a basis not requiring the use of stockyard scales at said station; that live stock so shipped and loaded into cars is subject to tariff minimum weights, and is weighed upon track scales at the terminal market, and that the weight so ascertained is the basis upon which freight charges are computed; that stockyard scales at the town of Albee is not an instrumentality of shipment or carriage, and is not included in "transportation," and is not a facility for receiving, forwarding, or delivering property by the common carrier to and from its lines, or other lines and places connected therewith: that such scales would be useful and would be used only for the purpose of facilitating the consummation of business transactions between buyers and sellers of local stock, and would not be used at the station of Albee as the basis of weight for ascertaining or computing freight charges

for transportation, or for any purpose connected with transportation of such property by the defendant; that carload lots of stock are always shipped subject to tariff minimum carload rates, and that weighing at terminal or other points en route is for the purpose only of ascertaining the excess of the load over minimum weight, upon which excess freight charges are computed to be added to the minimum carload rate.

The following facts, although not included in the express findings of the Board of Railroad Commissioners, or in the findings of the trial court, are shown by undisputed evidence in the record, viz.: From May, 1912, to April, 1915, inclusive, only 56 carloads of stock were shipped from the town of Albee to terminal points outside of the state, and during the same period not a single carload shipment was made to any point in South Dakota; also that in the same period only two shipments of single animals were made to a point in South Dakota.

As a conclusion of law the court found that the enforcement of the order would not be justified by public necessities which defendant could lawfully be compelled to meet, and would constitute an arbitrary and unreasonable taking of defendant's property. Thereupon judgment was entered, reversing the order of the Board of Railroad Commissioners, and the matter is before us upon appeal from the findings, conclusion, and judgment of the circuit court.

[1] Appellant relies upon two propositions: First, that local buyers and sellers of live stock have the right to demand the installation of stockyard scales for their own convenience in buying live stock; and, second, that it is the duty of the carrier to furnish the shipper such facilities as will enable him to avoid underloading cars where the rate is fixed upon minimum loads, and to ascertain the cost of shipping stock in a car in excess of the minimum carload weight. The fallacy of the first proposition is so clear that discussion would be idle. The carrier owes no duty to the local buyer or seller of live stock until the stock is tendered at the stockyards for shipment. New Mexico Wool Growers' Ass'n v. ⸱ ⸱⸱ ⸱ T. & S. F. R. R. Co., 20 N. M. 33, 145 Pac. 1077; McDonald v. Pittsburg, C., C. & Ct. L. R. Co., P. U. R. 1916E, 801.

[2] The evidence on behalf of appellant is substantially

as follows:  Mr. Cahill, one of the complainants, testified that his firm were the only buyers of live stock at Albee; that the stockyards scales were required for their convenience and for the convenience of the patrons of the railroad company; that when they bought stock, and weighed it on different scales, the sellers were not satisfied: that they did not buy in carloads, and that carload weights would not determine the amount of stock bought from any individual; that his firm bought by weight; that, when buying stock, it was driven into the stockyards, and each animal was taken to a scale belonging to a coal dealer, about 200 feet from the stockyards, where it was weighed; that the freight rates on stock shipments w~~ · ~~rmined by weighing on track scales at the terminal point, which is the uniform practice; that his firm ships practically all their stock to South St. Paul; that they had made no shipments of stock in carload lots to any point in South Dakota; that the only way they can arrive at values of stock is by weighing it—that is, the value allowed the seller; that sometimes they had two or three carloads of stock in the yards at one time; that stock cars were of different capacities, and that it was, necessary to weigh stock when loading it, in order to determine the minimum load for each car; that the main thing is to guard against overloading and underloading; that they pay more attention to the condition of the cars as to overcrowding than as to weight.  Mr. Redman, his partner, testified that it would be more convenient for his firm and for the men they buy from to have a scale on account of weighing the stuff; that it would also be handy in the way of loading cars, as Mr. Cahill stated; that two or three times parties at Watertown would have bought hogs, but they were unable to sell them on account of not having any way to weigh them. Mr. Street, a witness for the complainants testified that the principal reason why there should be scales at the stockyards at Albee is in buying cattle; that he was a stock raiser and would rather sell stock to a buyer where there was a stockyards scale: that he preferred to sell by weight rather than on the hoof; that the scale facilitates business between the purchaser and the seller; that he ships his stock to South St. Paul.  Wellatz, a witness on behalf of complainants, testified that he was a stock raiser and sold mostly to Redman and Cahill; that they ought to have a stockyards scale at Albee because they had

so much bother with other scales when stock was weighed. Mr. Chambers, station agent at Albee, testified that in 1912 eleven carloads of stock were shipped from Albee, in 1913 four carloads, in 1914 nineteen carloads, in 1915 from January to April, inclusive, nine carloads—a total of 56 carloads; that no carload shipments of stock during that time had been made to any point in South Dakota; that a couple of single animals carried to Bancroft were the only intra state shipments made in the same period.

The general rule, as stated in 10 Corpus Juris, 59 (§ 44), is that:

"The Legislature of a state has the power to require carriers, in the carrying on of their business as such, to afford every reasonable facility and convenience for the transaction of such business with the patronizing public, and this power may be delegated to a commission by the Legislature. The carrier may, in addition to the facilities and accommodations already furnished, be required to render a particular service that is essentially its duty to do, for the reasonable requirements of the public service undertaken, and the fact that such service would be unremunerative and burdensome does not operate to prevent the state from imposing the duty to perform it, if the burden to the carrier has some fair relation to the benefits accruing to the public, and the burden of the particular service, considered with reference to the entire business of the carrier, does not in fact amount to a denial to the carrier of a reasonable compensation for the service rendered by it as an entirety. * * * The duty of a carrier of live stock it is said cannot be efficiently discharged without the aid of pens or yards in which the live stock offered for shipment can be received and handled with safety and without inconvenience to the public, before being loaded in the cars in which they are to be transported, and such duty is strictly analogous to the duty of the carrier to construct and maintain a secure depot for inanimate freight." Id. 79 (§ 81).

[3] The principle stated is applicable here. The furnishing of stockyard scales by the carrier, at the point of shipment of live stock by means of which the shipper may ascertain the minimum loading of cars, as well as excess loading, so far pertains to the business of transportation itself as to constitute such scales a reasonable facility for transacting its business with shippers at the

initial point of shipment. The reasonableness of such requirement, however, depends in each instance upon surrounding circumstances and conditions. The judgment appealed from appears to have been based largely upon the theory that stockyard scales are not an instrumentality of transportation of live stock, although the trial court found that such a scale "is not a facility necessary for the safety, convenience, and accommodation of the public", at the town of Albee. The evidence is undisputed as to the amount of live stock shipped each year during the three years preceding the hearing; but we are not convinced that the installation of a four-ton stock scale, as ordered by the Board of Railway Commissioners, is not actually and reasonably necessary for the proper convenience of shippers of live stock.

[4] The general rule, where such administrative commissions have been created by law, and vested with authority to investigate and determine conditions which justify the requirement of proper facilities for the transportation of commodities or passengers, is that a determination or decision upon matters of fact should not be disturbed by appellate courts, unless it clearly appears that such decision is unreasonable or arbitrary, or is based upon an erroneous or mistaken theory of the law. Minneapolis, etc., Ry. Co. v. Railroad Comm., 136 Wis. 146, 116 N. W. 906; 17 L. R. A. (N. S.) 821; People ex rel v. Public Service Comm. et al., 173, App. Div. 780, 160 N. Y. Supp. 63; Hocking Valley Ry. Co. v. Board of Public Ut. Comms., 92 Ohio St. 9, 110 N. E. 621, Am. Cas. 1917B, 1154; Public Service Ry. Co. v. Board of Public Ut. Comms., 87 N. J. Law, 250, 93 Atl. 585; State ex rel. v. Great Northern Ry. Co., 123 Minn. 463, 144 N. W. 155.

We are therefore of the view that the findings and judgment of the trial court should be reversed, and the order of the Railway Commissioners, requiring the installation of any standard four-ton stockyards scale at the town of Albee, should be affirmed. It will be so ordered and adjudged.